UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DONALD M. GAMA,<br><br>                Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,[1]<br><br>                Defendant. | NO. C12-1764-RAJ-JPD<br><br><br>REPORT AND<br>RECOMMENDATION |

Plaintiff Donald M. Gama appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## I.  FACTS AND PROCEDURAL HISTORY

Plaintiff was born in 1958 and was 50 years old on the alleged disability onset date. Administrative Record ("AR") at 40. He has a high school education and previously worked

---

[1] Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this suit. **The Clerk of Court is directed to update the docket accordingly, and the parties are ordered to update the caption on all future filings with the Court.**

REPORT AND RECOMMENDATION - 1

as a building maintenance repairer and a frame-table operator. AR at 40, 54, 171, 195. Plaintiff was last gainfully employed on May 1, 2009. AR at 190.

On August 11, 2009, plaintiff filed a claim for SSI payments. AR at 150-52. On September 2, 2009, he filed an application for DIB, alleging an onset date of May 1, 2009. AR at 153-60. Plaintiff asserts that he is disabled due to left arm pain/left bicep deformity, COPD/asthma, bipolar I disorder, polysubstance dependence in remission, and dementia. AR at 28, 190.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 73-87. Plaintiff requested a hearing which took place on May 10, 2011. AR at 51-68. On June 1, 2011, the ALJ issued a decision finding plaintiff not disabled at step four and, alternatively, at step five of the sequential evaluation process. AR at 26-45. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On October 10, 2012, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 1.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

REPORT AND RECOMMENDATION - 2

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV.   EVALUATING DISABILITY

As the claimant, Mr. Gama bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)  (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are

of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[2]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On June 1, 2011, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since May 1, 2009, the alleged onset date.

3. The claimant has the following severe impairments: left arm pain/left biceps deformity; COPD/asthma; bipolar I disorder, recurrent, severe; and polysubstance dependence in remission.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: the claimant can only occasionally climb ladders, ropes, scaffolds, and crawl; the claimant can frequently climb ramps and stairs, balance, stoop, kneel, and crouch; the claimant should avoid concentrated exposure to extreme cold; the claimant should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; the claimant can remember and carry out one and two step instructions; the claimant cannot have contact with the general public, but can work with a small group of coworkers and a supervisor; and the claimant can meet basic adaptive needs so long as sobriety is maintained.

6. The claimant is capable of performing past relevant work as a: maintenance repairer, building (DOT # 899.381-010) SVP 7, medium; and frame-table operator (DOT# 669.662-014) SVP 5, medium. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2009, through the date of this decision.

AR at 27-43.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Given the ALJ's residual functional capacity assessment, does substantial evidence support the ALJ's step-four decision?

2. Given the ALJ's residual functional capacity assessment, was the ALJ required to obtain vocational-expert testimony at step five?

3. Does a State Agency Vocational Worksheet carry the Commissioner's step-five burden of production?

4. Should the ALJ have obtained objective memory and other neuropsychological testing?

Dkt. No. 16 at 1.

## VII. DISCUSSION

A. <u>The ALJ Erred in Finding Plaintiff Capable of Performing His Past Relevant Work as Actually and Generally Performed at Step Four</u>.

At step four, the claimant has the burden of showing that he is no longer able to perform his past relevant work. *Lewis v. Barnhart,* 281 F.3d 1081, 1083 (9th Cir. 2002) (citing *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001)). The step four determination involves a comparison between the demands of the claimant's former work and his present capacity. *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986). A claimant cannot merely show that he is incapable of performing the particular job he once performed; he must prove that he cannot return to the same type of work. *Id.* at 798. If the claimant is unable meet his burden, that

REPORT AND RECOMMENDATION - 6

burden remains with him rather than shifting to Secretary to proceed with step five. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).

A person is not disabled if they are able to perform their past work. 20 C.F.R. § 404.1502(f). Social Security Ruling ("SSR") 82–61 describes the tests for determining whether or not a claimant retains the capacity to perform her past relevant work. One of the tests identifies that "where the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be 'not disabled.'" SSR 82–61. Another test is "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." *Id.*

The *Dictionary of Occupational Titles* ("DOT") is the "best source for how a job is generally performed." *Pinto*, 249 F.3d at 845. In classifying prior work, the agency must keep in mind that every occupation involves various tasks that may require differing levels of physical exertion. It is error for the ALJ to classify an occupation "according to the least demanding function." *Valenica v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985). DOT descriptions "can be relied upon — for jobs that are listed in the DOT — to define the job as it is *usually* performed in the national economy." SSR 82–61. Thus, "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" *Id*.

A claimant's properly completed vocational report (SSA-3369-F6) may be sufficient to furnish information about their past work. *Id*. However, when significant variation exists between a claimant's description of her job and the DOT description of his job, it may be the result of a composite job. *Id.* A composite job has "significant elements of two or more

REPORT AND RECOMMENDATION - 7

1    occupations, and as such, ha[s] no counterpart in the DOT." *Id.*  Composite jobs are evaluated

2    "according to the particular facts of each individual case." *Id.*

3    In this case, the ALJ found plaintiff capable of performing his past relevant work as a

4    maintenance repairer and frame-table operator as actually and generally performed. AR at 40.

5    The ALJ stated that although plaintiff's RFC is for light work, "[plaintiff] was fired from his

6    job for fighting, not for an inability to perform the work.  Therefore, despite the limitation to

7    light work, it appears that [plaintiff] managed to perform this work with his impairment." *Id*.

8    Plaintiff argues that substantial evidence does not support the ALJ's finding that he

9    could perform his past relevant work as actually or generally performed given the ALJ's RFC

10   assessment. Dkt. No. 16 at 6-8. Plaintiff points out that his two past relevant jobs are specified

11   by the DOT as having a medium exertional level. *See* 20 C.F.R. § 404.1567(c) (defining

12   medium work).  Therefore, plaintiff contends that the ALJ's RFC assessment – which restricts

13   plaintiff to light work – precludes him from performing his past relevant work. *See* 20 C.F.R.

14   § 404.1567(b) (defining light work).

15   Plaintiff further contends that he could not perform any skilled work given the ALJ's

16   restriction to unskilled work, with one and two step instructions. AR at 31, 43. He notes that

17   the ALJ specifically determined that his past relevant work as a building maintenance repairer

18   (Specific Vocational Preparation ("SPV") of 7), and a frame-table operator (SVP of 5) were

19   skilled. AR at 40. Plaintiff asserts that a restriction to unskilled work – which corresponds to a

20   SVP of 1-2 – does not allow performance of his two skilled past relevant jobs. *See* 20 C.F.R.

21   404.1568(a)-(c) (defining skill levels).

22   The Commissioner concedes that the ALJ erred in finding plaintiff could perform has

23   past relevant work as *generally* performed, but asserts this error was harmless because the ALJ

24

REPORT AND RECOMMENDATION - 8

properly determined plaintiff could perform his past relevant work as *actually* performed. Dkt. No. 17 at 12-13.

However, there is no evidence that plaintiff's past relevant jobs were actually performed at the "light" rather than the "medium" exertional level. Plaintiff reported – and the ALJ did not dispute – that he lifted up to 100 pounds, and frequently lifted 25 pounds. AR at 56, 172-73, 198, 200. Thus, plaintiff could not perform either job as actually performed given the ALJ's restriction to light work, which involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1568.

Furthermore, there is no evidence that plaintiff's past relevant jobs were consistent with the ALJ's restriction to unskilled work, with one and two step instructions. As plaintiff points out, the ALJ specifically determined that plaintiff's past relevant jobs were skilled, and there is no evidence in the record his past relevant jobs were performed at the unskilled level. Accordingly, plaintiff could not perform either job as actually performed given the ALJ's restriction to unskilled work, with one and two step instructions.

For foregoing reasons, the ALJ erred in finding plaintiff capable of performing his past relevant work as actually and generally performed.

  B. <u>The ALJ Improperly Relied on the Medical-Vocational Guidelines and Failed to Obtain Vocational Expert Testimony at Step Five</u>.

The Medical-Vocational Guidelines or "grids" present a short-hand method for determining the availability and numbers of suitable jobs for claimants, addressing factors relevant to a claimant's ability to work, such as age, education, and work experience. *See* 20 C.F.R. pt. 404, Subpt. P, App. 2. Their purpose is to streamline the administrative process and encourage uniform treatment of claims. *Tackett*, 180 F.3d at 1101.

REPORT AND RECOMMENDATION - 9

An ALJ may rely on the grids to meet his burden at step five. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). "They may be used, however, 'only when the grids accurately and completely describe the claimant's abilities and limitations.'" *Id.* (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)). "When a claimant's non-exertional limitations are 'sufficiently severe' so as not to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable[]" and the testimony of a vocational expert is required. *Id*. (quoting *Desrosiers v. Sec'y of Health & Human Servs*., 846 F.2d 573, 577 (9th Cir. 1988)); *accord Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) ("[A]n ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to make the grids inapplicable to the particular case.").

"[T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Desrosiers*, 846 F.2d at 577 ("It is not necessary to permit a claimant to circumvent the guidelines simply by alleging the existence of a non-exertional impairment, such as pain, validated by a doctor's opinion that such impairment exists. To do so frustrates the purpose of the guidelines."); *accord Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986) ("The regulations . . . explicitly provide for the evaluation of claimants asserting both exertional and nonexertional limitations."). "Nonexertional impairments may or may not significantly narrow the range of work a person can do." SSR 83-14.

The ALJ in this case did not use a vocational expert and, instead, relied solely on the grids to perform his step-five evaluation. The ALJ determined that plaintiff's nonexertional

REPORT AND RECOMMENDATION - 10

limitations would not have a significant impact on his ability to perform unskilled work. AR at 40-43. He, therefore, deemed a finding of "not disabled" appropriate under the grids. *Id*.

Plaintiff argues that the ALJ erred by relying on the grids at step five. Dkt. No. 16 at 8-15. He contends that given the ALJ's RFC, his combined nonexertional limitations required the ALJ to obtain vocational expert testimony. Plaintiff points out that the ALJ found that plaintiff could perform light work but only in unskilled jobs involving one-and-two-step instructions, no contact with the general public, and a small group of coworkers and a supervisor. AR at 31-32. Plaintiff asserts that the ALJ cited no evidence or authority that his combined nonexertional limitations do not significantly erode the occupational base of unskilled work.

Plaintiff further contends that the restriction to one-and-two-step instructions limited him to jobs with DOT Reasoning Level 1, and thus eliminated jobs with Reasoning Levels 2 and 3.[3] Dkt. No. 16 at 11. Plaintiff asserts that because a restriction to one-and-two-step instructions eliminated Reasoning Level 2 and 3 jobs, that restriction was a significant nonexertional limitation requiring vocational expert testimony at step five.

---

[3] The DOT defines Reasoning Level 1, 2, and 3 as follows:

03 LEVEL REASONING DEVELOPMENT
Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations. . . .
02 LEVEL REASONING DEVELOPMENT
Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations. . . .
01 LEVEL REASONING DEVELOPMENT
Apply commonsense understanding to carry out simple <u>one-or two-step instructions</u>. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

Available at http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

REPORT AND RECOMMENDATION - 11

Plaintiff likewise asserts that a prohibition on working with the general public and more than a few coworkers and a supervisor necessitates the assistance of a vocational expert. He maintains that such a prohibition would significantly erode the occupational base of unskilled light work and that the ALJ had no way of knowing how many jobs would remain with this restriction absent vocational expert testimony. He also posits that the ALJ failed to consider the cumulative effect of his limitations.

The Commissioner did not respond to plaintiff's step five arguments.

The Court agrees with plaintiff that substantial evidence does not support the ALJ's conclusion that plaintiff's nonexertional limitations would not significantly erode the occupational base of unskilled work. Instead, the ALJ's determination merely speculates about the base of unskilled work without adequate support from case law or evidence from the record. The ALJ cites SSR 85-15 and *Hoopai* in support of his conclusion that the limitations assessed would not restrict the unskilled occupational base. However, as argued by plaintiff, neither SSR 85-15 nor *Hoopai* justify the ALJ's reliance on the grids in light of the nonexertional limitations assessed.

SSR 85-15 "supplements regulations providing the manner in which the Secretary will evaluate disability claims when the claimant suffers only 'nonexertional' impairments." *See Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995) (quoting SSR 85-15) (the purpose of the ruling is "to clarify how the regulations . . . provide a framework for decisions concerning persons who have only a nonexertional limitation(s) of function or an environmental restriction(s)."). "SSR 85-15 states that benefits may be awarded where a claimant suffers from a 'substantial loss' of the abilities 'to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.'" *Sandgathe v. Chater*, 108 F.3d 978, 980-81

REPORT AND RECOMMENDATION - 12

(9th Cir. 1997). However, the Ninth Circuit has held that "SSR 85-15 provides guidance only for cases in which the claimant asserts 'solely nonexertional impairments.'" *See Roberts*, 66 F.3d at 183; *see also Sandgathe*, 108 F.3d at 981. Here, the ALJ found plaintiff suffers from both exertional and nonexertional impairments. SSR 85-15 is therefore inapplicable and the ALJ erred in relying on it.

The case law relied upon by the ALJ is likewise distinguishable. In *Hoopai*, the ALJ determined that the claimant had severe depression at step two, but did not include any nonexertional limitations in the RFC finding, despite evidence of mild to moderate functional limitations. *Hoopai*, 499 F.3d at 1077. The Ninth Circuit rejected the argument that a step two severity finding for depression necessitated vocational expert testimony at step five, and declined to find "the evidence of mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limit[ed] [the] claimant's ability to do work beyond the exertional limitation." *Id*. By contrast, the ALJ in this case found plaintiff's nonexertional impairments resulted in restrictions that were included in the RFC assessment. Thus, *Hoopai* is inapposite to the case at hand. In addition, nothing in *Hoopai* provides that a vocational expert is not required where a claimant is restricted to unskilled work with one-and-two-step instructions, no contact with the general public, and a small group of coworkers and a supervisor. Also, while the ALJ cites to other case law finding application of the grids appropriate in various circumstances, none of the case law cited reflects the existence of the limitations at issue here or their cumulative effect.

Given the nonexertional limitations assessed, it was error for the ALJ to rely solely on the grids. On remand, the ALJ must obtain testimony from a vocational expert, who can consider the record evidence concerning both exertional and nonexertional limitations of plaintiff.

REPORT AND RECOMMENDATION - 13

C. <u>The ALJ Erred By Relying on the State Agency's Vocational Worksheet</u>.

At step five, the ALJ found there are other jobs existing in significant numbers in the national economy that plaintiff can perform based on an unsigned Vocational Worksheet dated November 2, 2009.  AR at 43.  The ALJ stated,

> The state agency determined the claimant could perform the following work based on his residual functional capacity:  Photocopying – machine operator (clerical) (DOT 207.685-014) light, SVP 2; Collator Operator (clerical) (DOT 208.685-010) light, SVP 2; and Assembler (DOT 701.687-010) light, SVP 2 [AR at 339].  These types of jobs exist in significant numbers in the Pacific Northwest or in several regions of the country.

*Id.*

Plaintiff argues that the ALJ's step five finding is not supported by substantial evidence because the Vocational Worksheet relied upon by the ALJ did not include all of the limitations established by the ALJ's RFC assessment.  Dkt. No. 16 at 15-17.  Plaintiff points out that the occupations identified by the state agency were purportedly consistent with the RFC for light work involving simple, routine, repetitive tasks with no public contact.  AR at 339.  However, the ALJ found that plaintiff could perform light work but only in unskilled jobs involving one-and-two-step instructions, no contact with the general public, and a small group of coworkers and a supervisor.  AR at 31-32.  Thus, plaintiff contends substantial evidence does not support any reliance on the Vocational Worksheet.  *Cf. Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Because neither the hypothetical nor the answer properly set forth all of [the claimant's] impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.").

Plaintiff also contends that the ALJ did not cite the number of jobs available in the national or local economy for the three jobs mentioned in the Vocational Worksheet.  Thus, there is no evidence that these types of jobs exist in significant numbers.  *See* SSR 83-12 and

REPORT AND RECOMMENDATION - 14

SSR 83-14 ("Whenever a vocational resource is used and an individual is found to be not disabled, the determination or decision will include . . . a statement of the incidence of such work in the region in which the individual resides or in several regions of the country).

Plaintiff also argues that the ALJ failed to determine if the state agency's findings were consistent with the DOT as required by SSR 00-4p. Dkt. No. 16 at 15-17. Under SSR 00-4p, an ALJ has an affirmative responsibility to inquire as to whether the vocational expert's testimony is consistent with the DOT and, if there is a conflict, determine whether the vocational expert's explanation for the conflict is reasonable. *See Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). SSR 00-4p also requires the ALJ to explain in the decision how he resolved the conflict. The ALJ failed to do so here.

Additionally, plaintiff contends that none of the jobs cited in the Vocational Worksheet have a Reasoning Level 1 consistent with the ALJ's RFC assessment. *See* DOT 207.685-014, 206.685-010, and 701.687-010. The Commissioner did not respond to plaintiff's arguments.

As indicated above, the Ninth Circuit has expressly held that when the grids are inapplicable because a claimant's nonexertional limitations significantly limit the range of work that the claimant may be otherwise capable of performing, the testimony of a vocational expert is required. *See Hoopai*, 499 F.3d at 1075-76; *see also Tackett*, 180 F.3d at 1100-01. Because the Court has determined that the testimony of a vocational expert is required in this case, the state agency Vocational Worksheet is not substantial evidence capable of supporting the ALJ's step five decision. The ALJ erred in relying on the Vocational Worksheet.

D. The ALJ Erred By Failing To Obtain Objective Memory and Other Neuropsychological Testing.

Plaintiff argues, and the Court agrees, that the ALJ erred at step two in failing to find his dementia a severe impairment at step two because the ALJ failed to fulfill his duty to

REPORT AND RECOMMENDATION - 15

develop the record. Dkt. 16 at 17-20. The Commissioner counters that the ALJ properly determined plaintiff's severe impairments and that plaintiff merely argues for an alternative interpretation of the evidence. Dkt. No. 17 at 4-9. The Commissioner further argues that to the extent the ALJ erred at step two in failing to include dementia among plaintiff's severe impairments, such error was harmless. *Id*. at 9.

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs," such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling ("SSR") 85-28). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Id*. (citing *Bowen*, 482 U.S. at 153-54).

Dana Harmon, Ph.D., diagnosed plaintiff with bipolar disorder and polysubstance abuse in remission, in his June 2009 psychological evaluation. AR at 239. He also diagnosed plaintiff with dementia not otherwise specified and recommended that "WMS/Trails testing" (Wechsler Memory Scale and Trail Making Test) be performed. AR at 239, 241. Dr. Harmon opined plaintiff had marked to severe cognitive limitations, noting that he has "severe problems with memory, concentration, and confusion, which seem connected to his ADHD, mental health difficulties, and likely substance-induced persisting dementia." AR at 240. Dr. Harmon

REPORT AND RECOMMENDATION - 16

observed that plaintiff "was tangential, easily confused, and seemed to have little control over his emotions and impulses." *Id*. Dr. Harmon also noted that plaintiff had a "MiniMental Status Examination score of 26, which points to borderline cognitive deficits," but that "[h]e was mixed up about the season, became confused as he counted backwards from 100 by 7s, and could only remember one of three words after five minutes." *Id*.

The ALJ determined that plaintiff has bipolar disorder and polysubstance abuse in remission, but not dementia. AR at 28. The ALJ rejected the dementia as a severe impairment because "this diagnosis was not accompanied by any formal intelligence diagnostic tests, and it is inconsistent with the skill level of his past relevant work." *Id*. The ALJ's reasoning is unpersuasive.

Based on the record before the ALJ, the Court finds that the ALJ erred by failing to obtain the additional neuropsychological testing that Dr. Harmon stated was needed to assess plaintiff's cognitive deficits. Although plaintiff bears the burden of establishing his disability, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the sequential evaluation process. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). The ALJ's duty to develop the record is triggered either by "ambiguous evidence or when the record is inadequate for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)). The record here was inadequate. The ALJ indicated that plaintiff's dementia diagnosis was not accompanied by any formal intelligence diagnostic tests or objective medical evidence that it significantly limits plaintiff's ability to perform basic work activities. AR at 28. Dr. Harmon's opinion triggered the ALJ's duty to order a supplemental neuropsychological evaluation that includes objective testing necessary to properly evaluate the evidence of record. *See id*. On remand, the ALJ should order the neuropsychological testing Dr. Harmon stated

REPORT AND RECOMMENDATION - 17

1  was needed in order to fully develop the record, and redetermine whether dementia should be

2  among plaintiff's severe impairments at step two.

3                                          VIII.   CONCLUSION

4         For the foregoing reasons, the Court recommends that this case be REVERSED and

5  REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

6  instructions.  A proposed order accompanies this Report and Recommendation.

7         DATED this 9th day of July, 2013.

_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18